Gavin J. Rooney, Esq.
Joseph A. Fischetti, Esq.
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF LITTLE FERRY,<br><br>Plaintiff,<br><br>-v-<br><br>FIELDTURF USA INC., f/k/a FIELDTURF INTERNATIONAL, INC., FIELDTURF TACKETT, INC., and FIELDTURF, INC., and ABC Corp. 1-X,<br><br>Defendants. | (Document Filed Electronically)<br><br>Civil Action No. _____<br><br><br>**NOTICE OF REMOVAL** |

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTE THAT** pursuant to 28 U.S.C. §§ 1332, 1367, and 1441 Defendants FieldTurf USA Inc., FieldTurf Inc., and Tarkett, Inc. (incorrectly sued as FieldTurf Tackett, Inc.) (collectively "FieldTurf"), hereby give notice of the removal to this Court of the State court action described below with full reservation of any and all rights, claims, remedies, objections and defenses:

### LOCAL CIVIL RULE 10.1 STATEMENT

1.      Plaintiff the Borough of Little Ferry ("Plaintiff") is a municipal corporation of the State of New Jersey with offices at 215-217 Liberty Street, Little Ferry, New Jersey.  (Ex. A, Compl. ¶ 1.)  Defendant FieldTurf USA Inc. is a Florida corporation with its principal place of business at 175 North Industrial Blvd, Calhoun Georgia 30701.  (*Id.* ¶ 2.)  Defendants Tarkett,

Inc. (incorrectly sued as FieldTurf Tackett, Inc.) and FieldTurf Inc. are foreign business entities that each has a principal place of business in Quebec, Canada. (*See id.* ¶ 3.)

## JURISDICTION AND VENUE

2.      This is a consumer fraud action over which this Court has original jurisdiction because complete diversity exists between Plaintiff and FieldTurf, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1), (2).

3.      Removal to this Court is proper because the civil action is being timely removed from the Superior Court of New Jersey, Law Division, Bergen County. 28 U.S.C. §§ 1441(a), 1446(a), (b)(1).   The Complaint pleads that Plaintiff resides in Bergen County, New Jersey, and under Local Civil Rule 40.1, this action should therefore ordinarily be allocated to the Newark vicinage of this Court.    (Ex. A, Compl. ¶ 1.)   However, as set forth below and in the accompanying Case Information Statement, this case involves the same factual and legal allegations at issue in a multi-district litigation (*In re FieldTurf Artificial Turf Marketing and Sales Practices* Litigation, Civil Action No. 3:17-md-02779 (MAS) (TJB)) presently pending before the Honorable Michael A. Shipp, U.S.D.J., of the Trenton vicinage, and this action should therefore be assigned to Judge Shipp for consolidation into that multi-district litigation.

4.      Pursuant to 28 U.S.C. § 1446(d), FieldTurf will promptly serve a copy of this Notice of Removal on counsel for Plaintiff and file same with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

## STATE COURT ACTION

5.      An action captioned *Borough of Little Ferry v. FieldTurf USA Inc., f/k/a/ FieldTurf International, Inc., FieldTurf Tackett, Inc., FieldTurf, Inc. and ABC Corp 1-X* was commenced in the Superior Court, Law Division, Bergen County, on May 11, 2018, and assigned Docket No. BER-L-3535-18. A true copy of the Complaint, along with copies of all process, pleadings, and orders, is attached hereto as Exhibit A. To FieldTurf's knowledge, no additional process, pleadings, or orders have been filed to date in this action outside of those attached as Exhibit A.

6.      Plaintiff asserts claims against FieldTurf for violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*  (Ex. A, Compl. ¶¶ 37-44), Truth-In-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.* (Ex. A Compl. ¶¶ 45-54), Breach of Express Warranty (*id.* ¶¶ 55-59), Breach of Implied Warranties (*id.* ¶¶ 60-69), Breach of Contract (*id.* ¶¶ 70-75), Breach of Covenant of Good Faith and Fair Dealing (*id.* ¶¶ 76-84), Fraud/Fraudulent Concealment/Fraudulent Misrepresentation (*id.* ¶¶ 85-93), Negligence/Negligent Misrepresentation (*id.* ¶¶ 94-103), and Unjust Enrichment (*id.* ¶¶ 104-108).  Among other things, Plaintiff seeks a declaratory judgment that FieldTurf violated the CFA and TCCWNA, treble damages, statutory civil penalties, attorneys' fees and costs, and pre-judgment and post-judgment interest.  (Ex. A, Compl. at 16 ¶¶ (A)-(C)-(F).)

7.      Plaintiff demands a trial by jury on all issues so triable.  (Ex. A, Compl. at 17.)

## TIMELINESS OF NOTICE OF REMOVAL

8.      FieldTurf was served with the Complaint on May 15, 2018.

9.      This notice is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days after service of the Complaint on FieldTurf.

## GROUNDS FOR REMOVAL

### A.      General Standards

10.      28 U.S.C. § 1446(a) provides, in pertinent part, that "[a] defendant . . . desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . ."

11.      28 U.S.C. § 1441(a) further provides, in pertinent part, that "any civil action in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."

### B.      Original Jurisdiction over Plaintiff's Claims

12.      28 U.S.C. § 1332(a) provides, in pertinent part, that the United States district courts shall have original jurisdiction over a civil action where the amount in controversy,

exclusive of interest and costs, exceeds $75,000 and is between: (1) citizens of different states; or (2) citizens of a state and citizens or subjects of a foreign state.

### 1.      Complete Diversity

13.      Pursuant to 28 U.S.C. § 1332(c)(1), in removal cases, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State where it has its principal place of business."

14.      The Complaint states that Plaintiff is a municipal corporation organized under the laws of New Jersey with a principal place of business in Little Ferry, New Jersey.  (Ex. A, Compl. ¶ 1.)  Thus, Plaintiff is a citizen of New Jersey, which is a state different from the states in which the FieldTurf Defendants are citizens.

15.      FieldTurf USA, Inc. is and was at the time of filing of the Complaint a Florida corporation with a principal place of business in Georgia.  FieldTurf USA, Inc. is accordingly a citizen of the State of Florida and of Georgia for diversity purposes.

16.      Tarkett, Inc. (incorrectly sued as FieldTurf Tackett, Inc.) is a foreign business entity organized under the laws of Canada with a principal place of business at 1001 Yamaska Street East, Farnham, Quebec, J2N 1J7, CA.  Tarkett, Inc. is accordingly a citizen of Canada for diversity purposes.

17.      FieldTurf, Inc. is a foreign business entity organized under the laws of Canada with a principal place of business at 7445 Cote de Liesse Road, Suite 200, Montreal, Quebec, H4T 1-G2, CA.  FieldTurf, Inc. is accordingly a citizen of Canada for diversity purposes.

18.      For purposes of removal, the citizenship of Defendants ABC CORP 1-X, sued under fictitious names, is disregarded.  28 U.S.C. § 1441(b)(1).

19.      Accordingly, minimal and complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332(a).

### 2.      Amount in Controversy

20.      The amount in controversy of all putative class members, exclusive of interest and costs, exceeds $75,000.  While the amount in controversy is not specifically pleaded in the

Complaint, the Complaint alleges that the price Plaintiff paid for FieldTurf's synthetic turf product was $373,288.50.  (Ex. A, Compl. ¶ 11.)  And, in addition to compensatory damages, Plaintiff further seeks repayment of monies Fieldturf obtained from Plaintiff (*id.* ¶¶ 44, 108) and statutory damages (*id.* ¶ 54) in this case. Therefore the amount at issue in this action exceeds the $75,000 amount in controversy requirement.  *See Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 567 (D.N.J. 2000) (when the amount in controversy is not pled, a court should perform "its own independent appraisal of the value of the claim").

## ALLOCATION TO PENDING MULTIDISTRICT LITIGATION

21.    This action is related to a multi-district litigation presently pending before the Honorable Michael J. Shipp, U.S.D.J.  *See In Re Fieldturf Artifical Turf Marketing And Sales Practices Litigation*, Docket No. 3:17-md-02779 (D.N.J.).

22.    Pursuant to Rule 7.2(a) of the Judicial Panel on Multidistrict Litigation's Rules of Procedure, "Potential tag-along actions filed in the transferee district do not require Panel action. A party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable local rules."

23.    Under Local Civil Rule 40.1(a), when an action is commenced, "[t]he Clerk shall consider the residence of the defendant, the convenience of litigants, counsel and witnesses, and the place where the cause of action arose."

24.    Under Local Civil Rule 40.1(c), if a civil action "grows out of the same transaction as any case already pending in this Court . . . counsel shall at the time of filing the action inform the Clerk of such fact.  Whenever possible, such action shall be assigned to the same Judge to whom the pending related action is assigned."

25.    This case involves the same synthetic turf products sold by FieldTurf that are at issue in the consolidated actions pending before Judge Shipp.  In these actions, the plaintiffs allege that FieldTurf deceived customers about the quality of its products, and that fields that the plaintiffs purchased deteriorated prematurely.  *See* (Ex. A, Compl. ¶¶ 32, 34.)  Plaintiffs all cite

to the same *Star Ledger* article as evidence that FieldTurf's products did not meet the quality standards that FieldTurf represented.  (*Id.* ¶¶ 27-28).

26.     Accordingly, this case should be allocated to the Trenton vicinage and assigned to Judge Shipp as part of the pending *In re Fieldturf Artifical Turf Marketing And Sales Practices Litigation* multi-district litigation.

**WHEREFORE**, FieldTurf hereby provides notice of its removal of this action to the United States District Court for the District of New Jersey and requests that this Court assume full jurisdiction over this cause as provided for by law, and that this action be assigned to Judge Shipp.

Dated: May 25, 2018                          Respectfully submitted,

                                              s/ Gavin J. Rooney
                                             Gavin J. Rooney
                                             Joseph A. Fischetti
                                             Lowenstein Sandler LLP
                                             One Lowenstein Drive
                                             Roseland, New Jersey 07068
                                             973.597.2500 phone
                                             973.597.2400 fax
                                             *Attorneys for Defendants*

# EXHIBIT

# A

**CULLEN AND DYKMAN LLP**
Anthony S. Bocchi, Esq. (Attorney I.D. No. 05602006)
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300
Attorneys for Plaintiff Borough of Little Ferry

| | |
|---|---|
| **BOROUGH OF LITTLE FERRY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**FIELDTURF USA INC., f/k/a/ FIELDTURF INTERNATIONAL, INC., FIELDTURF TACKETT, INC., FIELDTURF, INC. and ABC CORP 1-X,**<br><br>**Defendants.** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  BERGEN COUNTY**<br><br>**Docket No. BER-L-003535-18**<br><br><br>Civil Action<br><br><br>**SUMMONS** |

From The State of New Jersey To the Defendant Named Above:

> FieldTurf USA, Inc. f/k/a FieldTurf International, Inc.
> 175 North Industrial Blvd.
> Calhoun, Georgia 30701

       The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must

also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.


   /s/ Michelle M. Smith, Esq.
MICHELLE M. SMITH, ESQ.
Clerk of the Superior Court of New Jersey

Dated:  May 14, 2018


**Name of Defendant to be served:**        FieldTurf USA, Inc. f/k/a FieldTurf International, Inc.

**Address of Defendant to be served:**     175 North Industrial Blvd.
                                            Calhoun, Georgia 30701

**CULLEN AND DYKMAN LLP**
Anthony S. Bocchi, Esq. (Attorney I.D. No. 05602006)
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300
Attorneys for Plaintiff Borough of Little Ferry

| | |
|---|---|
| **BOROUGH OF LITTLE FERRY,** | **SUPERIOR COURT OF NEW JERSEY** |
| | **LAW DIVISION: BERGEN COUNTY** |
| **Plaintiff,** | **Docket No. BER-L-** |
| vs. | **Civil Action** |
| **FIELDTURF USA INC., f/k/a/** | |
| **FIELDTURF INTERNATIONAL, INC.,** | |
| **FIELDTURF TACKETT, INC.,** | **COMPLAINT** |
| **FIELDTURF, INC. and ABC CORP 1-X,** | **AND JURY TRIAL DEMAND** |
| **Defendants.** | |

Plaintiff, the Borough of Little Ferry ("Plaintiff" or "Borough"), by its attorneys, Cullen

and Dykman LLP, by way of Complaint against Defendants, alleges as follows:

## THE PARTIES

1.     The Borough is a municipal corporation of the State of New Jersey with offices at

215-217 Liberty Street, Little Ferry, New Jersey.

2.     Upon information and belief, FieldTurf USA, Inc. f/k/a FieldTurf International,

Inc., is a Florida corporation, with its principal place of business located at 175 North Industrial

Blvd, Calhoun, Georgia 30701, and, at all relevant times, was conducting business in the State of

New Jersey.

3.      Upon information and belief; FieldTurf Tarkett, Inc. and Field Inc. are Canadian Corporations with principal place of business at 7445 Cote de Liesse Road, Suite 200, Montreal, Quebec, H4T 1G2, CA, and, at all relevant times, were conducting business in the State of New Jersey.

4.      ABC Corp. I-X represents fictitious defendant corporations, whose identities are not yet known, and who were responsible for the design, manufacture, marketing, sale, or installation of the synthetic turf fields.

## FACTUAL ALLEGATIONS

**A.     Background**

5.      Defendants manufacture, market, sell, install and/or warrant synthetic turf fields throughout the United States and worldwide, including synthetic turf fields that are defective (hereafter "Turf Fields").

6.      Between 2005 and 2012, many of Defendants' customers in New Jersey included boards of education, school districts, schools, municipalities and other municipal entities.

7.      Upon information and belief, Defendants have the largest share of the synthetic turf field market in the country, and began selling turf fields under the Duraspine, Prestige XM and other product lines in or around 2005.

8.      Upon information and belief, Defendants marketed its Turf Fields to last ten or more years, and promised customers that the blades of their synthetic grass would "stand up" like natural grass. Defendants also marketed the Turf Fields to be more cost effective than maintaining a real grass field.

9.      Upon information and belief, Defendants marketed the Turf Fields to be made of the most durable and high quality materials, and warranted that the Turf Fields would provide

2

strong wear resistance. Defendants claimed the Turf Fields product line "has proven to be the most durable and longest-lasting synthetic turf system in the marketplace."

**B. The Borough's purchase of Defendants' synthetic turf product in connection with the Borough's improvement of the Mehrhof Road Recreation Field**

10.     On or about June 17, 2008, Plaintiff purchased a synthetic turf field for the Mehrhof Road Recreation Field, a municipal field located in the Borough. The synthetic turf was manufactured by Defendants.

11.     The total cost of the improvements made to Mehrhof Road Recreation Field -- of which Defendants' synthetic turf product was a major component – was in excess of $1 million. The price paid for the Defendants' synthetic turf product was $ $373,288.50.

12.     The synthetic turf product consists of 95,715 square feet of Prestige XM-60 Monofilament.  The product is marketed under the name Duraspine.  The field is striped for soccer and tee-ball fields.

13.     On or about July 6, 2008, Defendants furnished the Borough with an 8-year manufacturer's warranty ("Warranty") for repair or replacement of all, or any portion, of the synthetic turf field that experienced premature wear at no cost to the Borough. The Warranty did not go into effect until the issuance of a Certificate of Completion. Annexed hereto as Exhibit "A" is a true and correct copy of the Warranty.

14.     On or about January 15, 2009, the Borough was furnished with a "Certificate of Completion" in connection with the installation of Defendants' synthetic turf field at the Mehrhof Road Recreation Field.  Annexed hereto as Exhibit "B" is a true and correct copy of the Certificate of Completion.

3

**C. Defendants' awareness that their product line of Durapine Turf Fields was defective at least two years prior to their sale of their Durapine product to the Borough**

15.     At least two years prior to the 2008 sale to the Borough, Defendants became aware that many of its Duraspine-branded product (hereafter "the Defective Turf Fields") were deteriorating, breaking apart, fading, shredding, tearing, shedding, and lying flat prematurely, and that this was causing problems with customers using the fields Defendants had sold to them.

16.     Upon information and belief, candid, internal email discussions among Defendants' executives about their overblown sales pitches, reveal that Defendants were well aware as early as 2006 that the Defective Turf Fields would not perform as they were sold, warranted, and marketed to do. Nevertheless, Defendants never changed their marketing campaign for the Defective Turf Fields.

17.     On or about March 1, 2011, Defendants commenced an action against their polyethylene fiber supplier TenCate Thiolon in the United States District Court for the Northern District of Georgia bearing civil action no. 4:11-CV-5O-TWT (the 'TenCate Action").

18.     In their complaint in the TenCate Action. Defendants alleged that from 2005 through March 2011, TenCate was Defendants' exclusive supplier of the monofilament fiber which Defendants used in the Defective Turf Fields. Defendants further alleged, inter alia. That prior to 2007, TenCate changed both the formula and the process by which it made the fiber rendering the fiber "less durable," thereby "increasing the likelihood of premature fiber degradation under certain conditions and further, manufactured the fiber with an "[in]adequate amount of ultraviolet stabilizers required to prevent loss of tensile strength" thus exacerbating the fiber's "premature disintegration during the warranty period."

19.     Defendants admitted that, in 2009, Defendants "received complaints from a significant number of customers in North America who had purchased ... fields. Some customers

4

reported that the fibers on their fields were splitting and shedding during routine use (*e.g.*, covering player uniforms during sports games and practices). Other customers reported excessive thinning and fading of the fibers - especially along white and yellow lines, logos and other field areas composed of colored yarn. Still other customers reported that large areas of their fields in all colors had degraded dramatically."

20.     Defendants further alleged against TenCate that "[i]n many instances, customers complained that fiber in one tufted row of a field was failing, while fiber of the same color in an immediately adjacent tufted row was not failing. The existence of variable degradation rates in fiber exposed to the same environmental and wear conditions suggest at a minimum, that the [TenCate material] was not performing in a uniform manner. Upon information and belief such a marked variability in performance means that TenCate had quality control issues in their extrusion processes that resulted in alterations to what should have been chemically indistinguishable fibers."

21.     At that time, Defendants claimed 167 of their Defective Turf Fields had prematurely failed, and they estimated at least $21.3 million in future damages due to problems with their supplier.

22.     Upon information and belief Defendants began receiving customer complaints about Defective TurfFields failing much earlier, and commenced their own investigation into the defects in the fibers by 2006.

23.     In the TenCate Action, Eric Daliere, Defendants' CEO, testified under oath that at the very same time that Defendants filed the lawsuit against TenCate, they (1) considered the product to be defective; (2) were, nevertheless, in the process of installing 41 new fields made with the defective fibers without telling their customers their fields would likely fail prematurely;

(3) were replacing the defective fields that did fail with the same defective material, and (4) continued to make a profit on the defective fields at the expense of their unknowing customers. Excerpts from the transcript of Mr. Daliere's testimony are attached hereto as Exhibit "C" and incorporated herein by this reference ("Evolution" is TenCate's trade name for the fibers).

24.     Defendants continued to market, manufacture and/or sell Defective Turf Fields to municipalities, schools and other customers throughout the country, and specifically within New Jersey, until at least 2012. The majority of these fields were funded with taxpayer dollars.

25.     Upon information and belief, during the relevant time period, Defendants were aware the Defective Turf Fields were deteriorating faster than expected and would not last as long as promised.

26.     Upon information and belief, Defendants tried to cover up their knowledge of the defect, instructing an IT consultant to delete damaging internal emails.

27.     Defendants admit they have replaced nearly 20% of the Defective Turf Fields with warranty claims. Upon information and belief, the remaining 800 have not been replaced. However, all or nearly all of the fields installed by Defendants between 2005 and 2012 are subject to premature deterioration, premature failure and are otherwise defective. See, e.g., "The 100 Yard Deception," The Star Leger Dec. 4, 2016, FT 1-12 (finding that nearly all of the 50 Field Turf fields surveyed showed deterioration, and citing a University of Michigan Space Lab test confirming the strength of the turf to be below industry standards) (available at https://readymag.com/njdotcom/fieldturf/).

28.     The Star Ledger also reported that Defendants' synthetic turf products were "the most expensive on the market, but FieldTurf officials justified the cost by saying it would

6

perform better and last longer than any product sold by competitors, as well as the company's own, previous generation turf technology." See id.

29.     Upon information and belief, Defendants did not timely contact their customers to inform them of the defect in the Defective Turf Fields.

**D. Defendants provided a defective Turf Field product to the Borough notwithstanding that Defendants were aware of the product defects prior to the sale and completion of the product installation in 2009**

30.     As previously noted, the Borough in 2008 contracted to purchase a synthetic turf field at an athletic field in Little Ferry.   On or about January 15, 2009, the Borough was furnished with a "Certificate of Completion" in connection with the installation of Defendants' synthetic turf field at the Mehrhof Road Recreation Field.  See Exhibit "B'.

31.     Upon information and belief, despite knowing of the defects in 2006, Defendants did not disclose any of the foregoing to the Borough prior to, at, or after the time that the Borough obtained the product from Defendants, nor did Defendants disclose such facts prior to or at the time they received payments for the product.

32.     Upon information and belief, Defendants did not notify the Borough of the litigation against TenCate, nor did Defendants notify the Borough of the 167 premature field failures involving the same Evolution fiber used by Defendants in the Defective Turf Fields they sold.

33.     Defendants have not replaced the Borough's Turf Field nor compensated the Borough in any way for the false and misleading claims about Defendants' product.

34.     The present condition of the Borough's turf field evidences premature failure. Attached as Exhibit "D" are recent photographs of the field clearly depicting clusters of loose

7

fibers (attached to athletes' uniforms) and advanced deterioration. Additionally, the field evidences premature wear of colors and markings.

**E. Tolling of statutes of limitation**

35. Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. The Borough could not have reasonably discovered the true nature of the defect until shortly before this litigation was commenced. Defendants were and remain under a continuing duty to disclose to the Borough the true character, quality, and nature of the defect. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

36. In the alternative, certain claims herein are governed by the ten-year Statute of Repose, N.J.S.A. 2A:14-1.1, as well as the extension to the ten-year period pursuant to N.J.S.A. 2A:14-1.1b(2).

## COUNT ONE

### (Violation of the New Jersey Consumer Fraud Act)

37. The Borough incorporates the foregoing allegations as if fully set forth herein.

38. The New Jersey Consumer Fraud Act ("CFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment suppression or omission, in connection with the sale or advertisement of any merchandise . . ." N.J.S.A. 56:8-2.

39. Defendants engaged in unlawful conduct in violation of the CFA by making knowing and intentional omissions about the Defective Turf Field sold to the Borough.

8

40.     Defendants engaged in unlawful conduct in violation of the CFA because they did not fully and truthfully disclose to their customers the true nature of the Defective Turf Field, namely that the Defective Turf Field was prone to premature deterioration, and lacked the durability needed to be fit for use as a synthetic turf field.

41.     Defendants knowingly misled the Borough, and intended that the Borough would rely on the misrepresentations, omissions, and acts of concealment so that it would purchase the Defective Turf Field.

42.     Defendants' conduct caused the Borough to suffer an ascertainable loss. In addition to direct monetary losses, the Borough has suffered an ascertainable loss by receiving less than what was promised.

43.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by the Borough. Had the true information concerning the Defective Turf Field been disclosed, the Borough would not have purchased the turf fields, or would have paid less for it had the Borough decided to purchase it.

44.     The Borough seeks an order requiring Defendants to: (1) make full restitution of all funds wrongfully obtained; (2) pay actual damages; (3) pay treble damages; and (4) pay interest, attorneys' fees, and costs pursuant to N.J.S.A. 56:8-l9.

## COUNT TWO

### (Violations of the Truth-In-Consumer Contract, Warranty and Notice Act)

45.     The Borough incorporates the foregoing allegations as if fully set forth herein.

46.     The Borough is a "consumer" as defined by the Truth-in-Consumer Warranty and Notice Act ("TCCWNA") at N.J.S.A. 56:12-l5.

9

47.     Defendants' transactions with the Borough for the Defective Turf Field constitutes a "consumer contract," "warranty" and/or "notice" as defined by TCCWNA.

48.     The warranty information used by Defendants in the transactions with the Borough is a "consumer contract," "warranty'" and/or "'notice" within the meaning of TCCWNA.

49.     Defendants were sellers within the meaning of TCCWNA with respect to the Borough, and offered and entered into contracts that contained provisions contrary to the NJCFA.

50.     Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written notice which included misrepresentations and omissions that violated a clearly established right of the Borough as established by New Jersey law at the time the offer was made, the contract was signed, or the notice was given.

51.     Defendants offered and/or entered into a written consumer contract and/or gave or displayed a written notice which included -- or failed to include -- a provision that violated Defendants' clearly established responsibilities as established by New Jersey law at the time the offer was made, the contract was signed, or the notice was given.

52.     Defendants are directly liable to the Borough for damages pursuant to TCCWNA.

53.     Defendants are liable to the Borough for a statutory civil penalty and reasonable attorney's fees and costs pursuant to N.J.S.A. 56:12-17.

54.     The Borough demands judgment against Defendants for damages, the statutory penalty, attorney's fees and costs and declaratory relief.

10

## COUNT THREE

### (Breach of Express Warranty)

55.     The Borough incorporates the foregoing allegations as if fully set forth herein.

56.     Defendants expressly warranted that the Defective Turf Fields would be of high quality, would not suffer from premature deterioration, and would be useable as a turf field for at least ten years, as well as certain other express warranties.

57.     Defendants breached the express warranties that accompanied the sale of the Defective Turf Fields because, inter alia, the Defective Turf Fields were not of high quality, and Defendants knew this. Moreover, the Defective Turf Fields prematurely deteriorated, and were not durable enough to be usable as turf fields for ten years, and were otherwise defective.

58.     As a result, The Borough has suffered injury in fact and/or actual damages in an amount to be determined at trial.

59.     The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT FOUR

### (Breach of Implied Warranties)

60.     The Borough incorporates the foregoing allegations as if fully set forth herein.

61.     The Defective Turf Fields were sold by Defendants, a seller of synthetic turf fields, with the contract description that they would be durable enough to function as a turf field for at least 10 years, and would not suffer from premature deterioration.

62.     The Defective Turf Fields are defective in that they, inter alia, are not of the minimal standard for synthetic turf fields or the standard that Defendants impliedly warranted.

63.     The defect has caused damages to the Borough.

11

64.     The Borough relied on Defendants' skill and judgment as a turf field manufacturer in selecting the Defective Turf Fields for use as a synthetic turf field.

65.     Defendants were aware of The Borough's use for the Defective Turf Fields, and that the Borough was relying on Defendants in selecting the product.

66.     The Defective Turf Field was unfit for The Borough's particular use, being unable to withstand being used as a synthetic turf field for the period of time that Defendants impliedly warranted.

67.     The Defective Turf Field's unfitness has caused the Borough damages.

68.     The Borough has suffered injury in fact and/or actual damages in an amount to be determined at trial.

69.     The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT FIVE

### (Breach of Contract)

70.     The Borough incorporates the foregoing allegations as if fully set forth herein.

71.     Defendants entered into contracts with the Borough in which they agreed to, _inter alia_, sell a turf field that was warranted against manufacturer defects, and in which Defendants agreed to repair or replace all or any portion of a turf field provided by Defendants that prematurely deteriorates, wears or fails.

72.     The turf field provided by Defendants for the Borough is defective in that, _inter alia_, it suffered from premature deterioration, wearing and failure.  Accordingly, Defendants are obligated to replace them at no cost to the Borough.

73.     Defendants have failed to replace the fields as they are required to do by contract.

74.     The Borough has suffered injury in fact and/or actual damages in an amount to be determined at trial.

75.     The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT SIX

### (Breach of Covenant of Good Faith and Fair Dealing)

76.     The Borough incorporates the foregoing allegations as if fully set forth herein.

77.     Defendants have a duty of good faith and fair dealing with respect to their dealings with the Borough.

78.     There is an implied duty of good faith and fair dealing in every contract, and Defendants had an implied duty to ensure that their marketing materials and other representations regarding the quality of the Defective Turf Fields were not false and misleading.

79.     Defendants knew that the Defective Turf Fields lacked durability when they marketed, sold and/or provided the Defective Turf Field for the Borough.

80.     Defendants breached the covenant of good faith and fair dealing by engaging in deceptive and misleading representations of the quality of the Defective Turf Fields.

81.     Defendants acted recklessly, maliciously, in bad fill and without good cause, thereby preventing the Borough from receiving their reasonably expected benefits of its purchase.

82.     The Borough relied to their detriment upon misleading assertions and conduct of Defendants and such reliance may be presumed based on the Defendants' unlawful conduct.

13

83.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, the Borough have suffered injury in fact and/or actual damages in an amount to be determined at trial.

84.     The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT SEVEN

### (Fraud/Fraudulent Concealment/Fraudulent Misrepresentation)

85.     The Borough incorporates the foregoing allegations as if fully set forth herein.

86.     Defendants made material misstatements of fact to the Borough regarding the quality and durability of the Defective Turf Fields. As a result, the Borough was fraudulently induced to purchase the Defective Turf Fields with false and inflated information.

87.     These misstatements by Defendants were made with knowledge of their falsity, and with the intent that The Borough would rely upon them.

88.     As described herein, Defendants fraudulently marketed the Defective Turf Fields as having the durability to be free from premature deterioration and to be used as turf fields for at least ten years, despite their knowledge that the product was defective.

89.     At the time Defendants made these misrepresentations and concealments, and at the time the Borough purchased the Defective Turf Field, the Borough was unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

90.     In making these representations, Defendants knew they were false and/or misleading, and intended that the Borough would rely upon such misrepresentations.

91.     The Borough did, in fact, rely upon Defendants' misrepresentations.

14

92.     As a direct and proximate result of Defendants' deceptive, fraudulent, and unfair practices, the Borough has suffered injury in fact and/or actual damages in an amount to be determined at trial.

93.     The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT EIGHT

### (Negligence/ Negligent Misrepresentation)

94.     The Borough incorporates the foregoing allegations as if fully set forth herein.

95.     Under the circumstances alleged, Defendants owed a duty to the Borough to provide them with accurate information regarding the true qualities of the Defective Turf Fields.

96.     Under the circumstances alleged, Defendants owed a duty to the Borough to prevent the premature deterioration or failure of the turf fields provided by Defendants.

97.     Defendants' representations, as described herein, were false, negligent and material.

98.     Defendants negligently made these misrepresentations with the understanding that the Borough would rely upon them.

99.     The Borough did in fact reasonably rely upon these misrepresentations and concealments made by Defendants.

100.    Defendants negligently failed to provide turf fields of the quality and durability to be used as intended.

101.    Defendants negligently failed to provide accurate information to the Borough.

102.    As a direct and proximate result, of Defendants' negligent actions, the Borough has suffered injury in fact and/or actual damages in an amount to be determined at trial.

15

103.    The Borough demands judgment against Defendants for damages and declaratory relief.

## COUNT NINE

### (Unjust Enrichment)

104.    The Borough incorporates the foregoing allegations as if fully set forth herein.

105.    The Borough conferred a tangible economic benefit on Defendants by purchasing the Defective Turf Field. The Borough would not have purchased the Defective Turf Field had it known the true nature of the Defective Turf Field, or it would have paid substantially less for it.

106.    Because of Defendants' wrongful acts and omissions. Defendants were able to complete sales and charge a higher price for the Defective Turf Field than the product's true value, and Defendants obtained monies which rightfully belong to the Borough.

107.    Defendants enjoyed the benefit of increased financial gains, to the detriment of the Borough. It would be inequitable and unjust for Defendants to retain these wrongfully obtained funds.

108.    Therefore, in the alternative to the warranty and contract claims stated above, The Borough seeks an order requiring Defendants to make restitution and disgorgement to it.

**WHEREFORE**, the Borough demands judgment against Defendants as follows:

A.    Declaratory judgment at Defendants violated the NJFCA and TCWWNA;

B.    Actual damages;

C.    Treble damages;

D.    Statutory civil penalties payable to the Borough;

E.    Reasonable attorney's fees and costs;

F.    Pre-judgment interest and post-judgment interest; and

G.    Such other relief as the Court shall deem equitable and just.

CULLEN AND DYKMAN LLP
Attorneys for Plaintiff
Borough of Little Ferry

By: _____
Anthony S. Bocchi, Esq.

Dated:  May 11, 2018

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:5-1(c), Anthony S. Bocchi, Esq. is hereby designated as trial counsel

for Plaintiff Borough of Little Ferry.

CULLEN AND DYKMAN LLP
Attorneys for Plaintiff
Borough of Little Ferry

By: _____
Anthony S. Bocchi, Esq.

Dated:  May 11, 2018

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

CULLEN AND DYKMAN LLP
Attorneys for Plaintiff
Borough of Little Ferry

By: _____
Anthony S. Bocchi, Esq.

Dated:  May 11, 2018

17

## RULE 4:5-1 CERTIFICATION

I hereby certify pursuant to R. 4:5-1 that this matter is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.  I further certify that I am unaware of any non-party who should be joined in this action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party based on the same transactional facts.

_____
Anthony S. Bocchi, Esq.

Dated:  May 11, 2018

18

# EXHIBIT A

# PRESTIGE

## PRESTIGE FOR MULTI SPORT
## FIELD ACTIVITIES

### Manufacturer's Limited Warranty

FIELDTURF TARKETT warrants that if Prestige XM-60, for soccer use, synthetic turf proves to be defective in material or workmanship, resulting in a loss of pile height greater than 50%, during normal and ordinary use of the Product for the sporting activities set out below or for any other uses for which FIELDTURF TARKETT gives its written authorization, within 8 years from the date of completion of installation, FIELDTURF TARKETT will, at FIELDTURF TARKETT's option, either repair or replace the affected area without charge, to the extent required to meet the warranty period (but no cash refunds will be made). This warranty term is for installations located at altitudes at or below 4500 ft. above sea level. This warranty does not come into effect until the certificate of completion is sent for validation to the head office of FIELDTURF TARKETT indicated below within 30 days of installation. This warranty is limited to the remedies of repair or replacement, which shall constitute the exclusive remedies available under this warranty, and all other remedies, or recourses which might otherwise be available are hereby waived by the Buyer. FIELDTURF TARKETT will have no other obligations or liability for damages arising out of or in connection with the use or performance of the product including but without limitation, damages for personal injury or economic losses.

### Other Exclusions

This warranty does not cover:

1. Damage resulting from accident, force majeure, misuse, intentional and unintentional abuse, until displacement and neglect or from other than normal and ordinary use of the Product for the purposes intended by FIELDTURF TARKETT. Normal and ordinary use is considered as under up to 3,000 hours per year of regular play and utilization for the sporting activities set out in the warranty. Normal play and ordinary use includes a reasonable number of users or participants and does not include repetitive practising, repetitive training or high intensity drills on the same part of the field, in particular for but not limited to white or yellow lines, goal areas, sideline areas on the areas around the bases, home plate and the pitcher's mound.
2. Damage resulting from failure to maintain the Product in accordance with the maintenance and use instructions provided to the Buyer. (Buyer shall produce maintenance logs).
3. Damage resulting from maintenance, repair or attempted repair by anyone other than FIELDTURF TARKETT or an authorized distributor or an recognized third party serviceman.
4. Damage and all costs which could include but are not limited to the application of chemicals or cleaning agents, adhesive backing, dirt, traffic, normal matting, wear, tearing, negligence, vandalism, fire, flood, windstorm, acts of God, and improper care.
5. Repairs or improper design of the base. Depression of the soil or matter upon which the base of Product rests.
6. Fading, UV degradation or discoloration of the fiber.
7. Soccer penalty points, which must be replaced regularly during annual maintenance operations. Soccer penalty areas, which are heavily trampled during intensive play. The penalty area is a zone limited to a distance of 1 meter from each side of the goal posts.
8. Use of improper footwear such as long spiked track shoes and regular use of metal cleats. Standard soccer or football cleats are recommended. Flat steel shoes such as work boots should be avoided.

We disclaim liability for incidental and consequential damages for breach of any express or implied warranty, including any implied warranty of merchantability with respect to the Product. In the event that the Product is used for purposes other than the specific sporting activities set out herein or any other uses for which FIELDTURF TARKETT gives its written authorization, it being understood that FIELDTURF TARKETT has tested the Product for use in connection with these sporting activities and may not have tested it for other uses, FIELDTURF TARKETT shall not be responsible for any and all damages incurred and this limited warranty as well as all other warranties shall become null and void. Any product repairs or replacements performed under the terms of this guarantee shall not lead to any extension whatsoever of the guarantee. The FIELDTURF TARKETT guarantee shall be valid provided that the surface on which the product is laid is fit for installation of artificial turf and meets all norms in force in the country of installation. (There are no such norms as in the country of installation, French norms shall be applied).

| | |
|---|---|
| Location: Mehrhof Road Recreation Fields | Sporting Activities: Multi Sport Use |
| Date of completion: July 6", 2008 | Installed by: FieldTurf USA |

Name of purchaser: Borough of Little Ferry, 215 Liberty Street, Little Ferry, NJ. 07643

| | | | |
|---|---|---|---|
| Address: 150 Mehrhof Road | City: Little Ferry | State: NJ | Zip: 07643 |
| Tel: (201) 641-0234 | Fax: (201) 641-1957 | | FieldTurf Tarkett Reference: 89313 |

Signature: _[signature]_

John Adams
(Please print name)

Date: January 20, 2009

## FieldTurf Tarkett
### TURNING INGENUITY

This warranty is insured by a third party. For more information please contact FieldTurf Customer Service at the number listed below.
Director of Customer Service, FieldTurf Tarkett T-514-340-9311 Ext 104, TF-800-724-2969 Ext 104, F-514-341-9080, www.fieldturf.com

**EXHIBIT B**

01/16/2009 16:35 FAX  2014390444                                    ☒002/002



## CERTIFICATE OF COMPLETION

This certificate will confirm that the installation of the FIELDturf product located at:

IMPROVEMENTS TO MEHRHOF ROAD RECREATION FIELDS          BOROUGH OF LITTLE FERRY
(field name)                                            (school / city or company name)

| | |
|---|---|
| Address: | MEHRHOF ROAD |
| City, State, Zip | LITTLE FERRY, NJ  07643 |
| Tel: | (201) 641-9234 |
| Fax: | (201) 641-1957 |
| Contact name: | BARBARA MALDONADO | Email: |

has been completed to the satisfaction of the customer.

Date of First use: _____     FieldTurf Reference: _____

Sporting activities: _____

Owner Information:

| | |
|---|---|
| Owner: | SEE ABOVE |
| Address: | 215 LIBERTY STREET |
| City, State, Zip | BOROUGH OF LITTLE FERRY NJ 07643 |

Signature: _____     Company: DAKOTA EXC. CONTI, INC

Print name: LARRY BASCOM JR     Title: V.P.

City: HACKENSACK     State: NJ

This 15TH day of JANUARY, 2009

| Punch List: | ☑ None | ☐ Attached | ☐ To Follow |
|---|---|---|---|

*The client acknowledges that in the event that the Product is used for purposes other than the specific activities it was designed for or any other uses for which FIELDturf gives its written authorization, it being understood that FIELDturf has tested the Product for use in connection with these activities and may not have tested it for other uses, FIELDturf shall not be responsible for any and all damages incurred and any warranties registered will become null and void.*

*The Customer hereby acknowledges that the Product is protected by patents worldwide and owned by FIELDturf.*

*The Customer undertakes to carry on the proper maintenance of the product as described in the maintenance instructions, which will accompany the Warranty*

8088 Montview Road Montreal - T.M.R., QC   H4P 2L7 Canada     Toll Free: (800) 724-2969, (514) 340-9311, Fax: (514) 340-9374
www.fieldturf.com

# EXHIBIT C

116

1    Q.   I just want to understand, though.  But in August of 2012

2    did you consider the fiber to be defective?

3    A.   I considered that it wouldn't be defective in the sense

4    that it would not last the eight years that we were offering

5    our customers from a warranty point of view.  It would last the

6    period that would be required on a replacement basis to get

7    from the time of the installation of the replacement field to

8    the end of the warranty period.

9    Q.   Did you tell your customers when you were going to replace

10    a field that you'd filed a lawsuit and that you were claiming

11    this fiber was defective?  Did you inform them of that?

12    A.   Most customers were aware of the fact that we'd filed a

13    lawsuit against TenCate related to the Evolution fiber.

14    Q.   Are you saying the school districts and the park districts

15    all knew about this lawsuit?

16    A.   Most of our competitors have made a big issue out of this

17    lawsuit, so my belief is that most customers are aware of the

18    lawsuit.

19    Q.   But I asked did you tell them?  Did you, sir, your people,

20    your salespeople when you were making the installation, did you

21    say, Look, I'm going to give you fiber but, look, it's

22    defective because we are suing over this fiber?  Did you tell

23    them that?

24    A.   We told them that they were getting the same fiber that

25    had not met the initial warranty period.

1    Q.    Did you tell them the fiber was defective?

2    A.    Not in those words.

3    Q.    When did you file this lawsuit?  Do you remember the date?

4    If I said March 1st, 2011, would that be correct?

5    A.    I honestly don't recall the exact date.

6    Q.    Well, if you were to assume that it was March, first week

7    of March 2011, would it surprise you that at the time you filed

8    this lawsuit claiming that Evolution was defective that your

9    people were still installing as many as 41 fields?

10   A.    No.

11   Q.    That wouldn't surprise you?

12   A.    No.

13   Q.    So the truth is you weren't only replacing fields, you

14   continued to install new fields even though you believed

15   supposedly that our fiber was defective; is that right?

16   A.    We -- in the public bid process, you have a very detailed

17   specification related to -- and it would include the Evolution

18   fiber.  So our challenge was is to not comply with the

19   specification and create a problem for the school by throwing

20   the bid process up.  Our intention, and we were aware of it

21   when we installed those fields that if we needed to honor the

22   warranty because of UV degradation, we stood ready to do that.

23   Q.    You took money and you put it in your pocket, didn't you?

24   You put it in FieldTurf's pocket and continued to install these

25   fields and make a profit?  You made profits from those fields,

118

```
1    didn't you, sir?

2    A.   Yes.
```

# EXHIBIT D





# Civil Case Information Statement

**Case Details: BERGEN | Civil Part Docket# L-003535-18**

**Case Caption:** BOROUGH OF LITTLE FE RRY  VS
FIELDTURF USA INC
**Case Initiation Date:** 05/11/2018
**Attorney Name:** ANTHONY S BOCCHI
**Firm Name:** CULLEN & DYKMAN LLP
**Address:** 433 HACKENSACK AVENUE 12TH FLOOR
HACKENSACK NJ 07601
**Phone:**
**Name of Party:** PLAINTIFF : Borough of Little Ferry
**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 12 JURORS
**Hurricane Sandy related?** NO
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
    **If yes, for what language:**


I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/11/2018
Dated

/s/ ANTHONY S BOCCHI
Signed